UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEITH MILTON PIGGUE,

                    Petitioner,                    Case No. 2:19-cv-223

v.                                                 Honorable Hala Y. Jarbou

CONNIE HORTON,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

          This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Keith Milton Piggue is incarcerated with the Michigan Department of Corrections at the

Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  On May 15,

2018, Petitioner pleaded guilty in the St. Clair County Circuit Court to delivery of a controlled

substance that caused the death of a person, in violation of Mich. Comp. Laws § 750.317a.  On

April 2, 2018, the court sentenced Petitioner to a prison term of 20 to 40 years, to be served

consecutively to the sentences for which Petitioner was on parole when he committed the "delivery

causing death" offense.

          On October 29, 2019, Petitioner filed his habeas corpus petition raising one ground

for relief, as follows:

> I.     Trial court erred by refusing to allow plea withdrawal.  Petitioner asserts
>        actual innocence and that his plea was not voluntary and that defense
>        counsel was constitutional[ly] ineffective, due to the failure to subpoena,
>        interview and investigate defense witnesses; failure to file motions to quash,
>        obtain Petitioner's cell phone data (inter alia).  Trial Court was unreasonable
>        to deny *Ginther* evidentiary hearing.

(Pet., ECF No. 1, PageID.5.)  Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they lack merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

<u>Discussion</u>

I.      **Factual allegations**

According to Petitioner's plea, on December 9, 2016, he sold heroin to Kyle Holt. (Plea Tr., ECF No. 10-3, PageID.93-94.)  Holt ingested the heroin and died.  (*Id*.)  The heroin contained a highly lethal substance called carfentanil.  (*Id*., PageID.94-95.)

Petitioner challenged his competency to stand trial during preliminary proceedings in the state district court.  That court declined to proceed with a competency evaluation.  However, after Petitioner was bound over to circuit court for further proceedings on the charges, the circuit court referred Petitioner for an assessment of his competency.  On September 8, 2017, the Center for Forensic Psychiatry issued a report concluding that Petitioner was competent to stand trial. (Report, ECF No. 10-5, PageID.279-283.)  Based on that report, the court found Petitioner competent to stand trial.  (Mot. Hr'g, ECF No. 10-2, PageID.83.)

After the court determined that Petitioner was competent to stand trial, the parties negotiated a plea deal.  On February 16, 2018, the court conducted a plea hearing, where the prosecutor disclosed the terms of the plea agreement, as follows:

> [Prosecutor]:  Your Honor, it's my understanding the Defendant will plead guilty as charged to Count One delivery of a controlled substance causing death, which is a life offense.  We will reduce the habitual fourth notice to that of hab third.  And your Honor, additionally we have discussed the fact that we recognize sentencing guidelines will ultimately be scored and determined by this Court, but in terms of

> some of the variables that could go either way in this particular case, the People will not be seeking to score points on OV6, OV8 or OV9.

> THE COURT: And is there an indication of what range the guidelines would be then based upon this case?

> [Prosecutor]: Yes, your Honor.  We utilized an older PSI so I think we should be fairly accurate on the expectation of guidelines and our good faith scoring should yield a result of 135 to 337 months.

> THE COURT: 135 months to 337 months for the minimum range on this particular case?

> [Prosecutor]: Correct, your Honor.

> [Defense]: That is an accurate recitation of our understanding and agreement as well as a good faith understanding of the scoring guidelines, your Honor, based on not, based on not scoring on six, eight and nine.

> THE COURT: If the parties are in agreement with that, the Court will accept that as the determination that will be made in terms of the guidelines so Mr. Piggue can rely upon that.

(Plea Tr., ECF No. 10-3, PageID.88-90.)

The court informed Petitioner of the charge to which he would be pleading guilty, the maximum penalty, the impact of the habitual offender determination, and the agreement regarding the minimum sentence range.  (*Id*., PageID.90-91.)  The court reviewed the rights Petitioner would be giving up by entering a plea of guilty.  (*Id*., PageID.91-92.)  Petitioner indicated that he intended to plead guilty.  The court then inquired whether that decision was voluntary:

> THE COURT: Okay.  Knowing all these factors, Mr. Piggue, how do you plead to the charge?

> [Petitioner]:  Guilty.

> THE COURT: This is your own choice?

> [Petitioner]:  Yes.

> THE COURT: No one has threatened you, or coerced you, or promised you anything I haven't heard this morning in order to get you to plead guilty?
>
> [Petitioner]: No.
>
> THE COURT: No one has promised you a specific sentence in terms of the actual number of years that you would be sentenced; just as long as I stay within the range that's been indicated here, correct?
>
> [Petitioner]: Yes.

(*Id*., PageID.92-93.)  Plaintiff then provided the factual basis for his plea.  The court closed by determining that the plea was voluntarily and knowingly made:

> THE COURT: Mr. Piggue, do you have any questions about anything that's happening here this morning?
>
> [Petitioner]: No.
>
> THE COURT: And the entire plea agreement is all part of the record?  I want to make sure of that because you're not going to be able to claim on appeal that you were forced into a plea or promised anything else that's part of the plea or sentence agreement unless it's stated on the record today.  So I just want to make sure that we have everything on the record.  As far as you're concerned, everything is on the record?
>
> [Petitioner]: Yes.
>
> THE COURT: And you're asking me to accept your guilty plea?
>
> [Petitioner]: Yes.
>
> THE COURT: Very well.  I will do that.  I will accept your plea of guilty, finding that it has been offered freely and voluntarily with full understanding.  And that the facts as acknowledged on the record do support the finding that you are guilty of having committed the offense.

(*Id*., PageID.97.)

Petitioner, with the assistance of his appellate counsel, moved the trial court to withdraw his plea.  He offered several reasons:  he acted out of fear; he was innocent; his attorney failed to properly prepare his case; and he lacked the competence or capacity to understand the

4

proceedings.  (Plea Withdrawal Hr'g Tr., ECF No. 10-4.)  The court denied relief.  Petitioner raised

the same arguments when he sought leave to appeal to the Michigan Court of Appeals.  (Pet'r's

Appl. for Leave to Appeal, ECF No. 10-5, PageID.129-136.)  By order entered January 16, 2019,

the Michigan Court of Appeals denied leave "for lack of merit in the grounds presented."  (Mich.

Ct. App. Order, ECF No. 10-5, PageID.121.)

       Petitioner raised the same issues in an application for leave to appeal to the

Michigan Supreme Court.  (Pet'r's Appl. for Leave to Appeal, ECF No. 10-6, PageID.336-354.)

That court denied leave by order entered July 29, 2019.  (Mich. Order, ECF No. 10-6, PageID.335.)

This petition followed.

## II.    AEDPA standard

       The AEDPA "prevents federal habeas 'retrials'" and ensures that state court

convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-

94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v.*

*Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

       The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the

Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652,

655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    The validity of Petitioner's plea

Petitioner's principal habeas issue comprises several distinct challenges to the validity of his plea.  First, Petitioner complains that the trial court erred when it refused to permit Petitioner to withdraw his plea.  Second, Petitioner claims that his guilty plea was involuntary for a number of reasons.

### A.    Motion to Withdraw Plea

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

### B.    Validity of Plea

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See*

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Petitioner's claims do not challenge the power of the state to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.  While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists.  *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 37); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376

(4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

Finally, the defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that

coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner suggests that his plea is invalid for all of those reasons: he was not competent; he was coerced by fear; and he was provided ineffective assistance of counsel.

### 1. Petitioner's competence

Just as a criminal defendant who is incompetent may not be tried, *Godinez v. Moran*, 509 U.S. 389, 396 (1993), a defendant who is incompetent may not enter a plea of guilty, *see Brady*, 397 U.S. at 756. The test for a defendant's competence to stand trial or plead is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 411 (1960); *see also Godinez*, 509 U.S. at 396; *United States v. Denkins*, 367 F.3d 537, 547 (6th Cir. 2004) (quoting *United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999). A court's failure to hold a proper hearing where substantial evidence exists of the defendant's incompetency violates the defendant's due process right to a fair trial. *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000). "[T]he standard . . . for requiring competency hearings prior to trial or the entry of a guilty plea is not merely whether extant evidence raises 'doubt' as to the defendant's capacity to stand trial, but rather whether evidence raises a 'bona fide doubt' as to a defendant's competence." *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004). In reaching its determination regarding competency, a court should consider evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion concerning his competence. *Mackey*, 217 F.3d at 411.

Here, Petitioner points to questions his counsel raised regarding his mental health at the state district and circuit courts and questions regarding his mental capacity raised by appellate counsel. The only evidence regarding any of these matters, however, is the report of the

Center for Forensic Psychiatry that concludes, unequivocally, that Petitioner was competent.  The circuit court's finding to that effect, therefore, is well-grounded in the record.

Petitioner fails to point to any record evidence of irrational behavior near the time of his plea that might have prompted the trial court to question Petitioner's competence.  To the contrary, the plea colloquy suggests that Petitioner was entirely rational at the time of his plea, that he was able to consult with his attorney with a reasonable degree of understanding, and that he understood the proceedings against him.

In short, Petitioner presents no record evidence to support his claim that he was not competent to plead guilty.  Accordingly, the trial court's determination that Petitioner was competent and the appellate court's rejection of Petitioner's incompetence claim as meritless is neither contrary to nor inconsistent with clearly established federal law.  Petitioner is not entitled to habeas relief based on incompetence.

### 2.    Voluntariness of Plea

Petitioner also suggests that his plea was involuntary because the prosecutor coerced him into pleading with the threat of putting Petitioner in prison for the rest of his life and his counsel communicated the prosecutor's threats to Petitioner.  The threat of possible life imprisonment, however, was not inappropriate.  The offense with which Petitioner was charged is a life offense.  Mich. Comp. Laws § 750.317a.[1]  It was the responsibility of Petitioner's counsel and the court to inform Petitioner of the consequences of accepting or rejecting the plea agreement.

---

[1]Indeed, it was only by virtue of the prosecutor's willingness to negotiate away the prospect of a life sentence—agreeing to a specific minimum sentence range—that Petitioner avoided the risk of a life sentence.  Virtually all of the plea negotiation related to Petitioner's sentence.  Because the prosecutor agreed to not score certain offense variables, Petitioner enjoyed at least the prospect of a minimum sentence as short as 11 years, 3 months.  Moreover, by negotiation of his fourth habitual offender enhancement to a third habitual offender enhancement, Petitioner reduced his maximum minimum sentence by almost 10 years.

Informing Petitioner of the prospect of a life sentence, therefore, "is not coercive[.]" *Williams v. United States*, 47 F. App'x 363, 370 (6th Cir. 2002).

Petitioner's counsel also purportedly stated that Petitioner could not win in trial because he was black. There is no record support for this claim which appears for the first time in counsel's argument on appeal. (Pet'r's Appl. for Leave to Appeal, ECF No. 10-5, PageID.135.) Indeed, the claim is contradicted by the plea transcript.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

The trial judge in Petitioner's case specifically asked Petitioner if there were promises or threats that caused him to enter his plea other than the terms of the agreement that were put on the record. Petitioner said there were not. Petitioner's present unsworn assertion that his counsel threatened Petitioner with a guaranteed loss because of his race does not overcome his sworn statement to the contrary in the plea transcript.

Accordingly, Petitioner has failed to show that the state appellate court's rejection of the claim that Petitioner's plea was coerced is contrary to, or an unreasonable application of, clearly established federal law.

### 3.    Ineffective assistance of counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.   The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.   Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances,

13

the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).[2]

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.

Not every ineffective assistance of counsel claim survives a guilty plea.  Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267.  The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the

---

[2] The Michigan Court of Appeals issued only a summary affirmance, denying the appeal for lack of merit in the grounds presented.  That affirmance, however, is deemed a decision on the merits of the claims presented that is entitled to AEDPA deference.  *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).

> voluntary and intelligent character of the guilty plea by showing that the advice he
> received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.   Consequently, a knowing and voluntary guilty plea waives all

nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel

that does not relate to the voluntariness of the plea.  *See U.S. v. Stiger*, 20 F. App'x 307, 308–09

(6th Cir. 2001).

      Some of Petitioner's claims of ineffective assistance do not attack the voluntary or

intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate

to earlier alleged constitutional deprivations.  He argues that counsel was not adequately prepared

for trial, failed to defend against the charge, failed to file a motion to quash, failed to obtain

Petitioner's cell phone data, failed to obtain an expert to testify regarding cell phone triangulation,

and failed to subpoena and investigate witnesses. Those claims do not relate directly to the

voluntary or intelligent nature of the plea and, therefore, have been waived by his subsequent guilty

plea.  *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th

Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).

      To the extent Petitioner claims that trial counsel's failure to prepare and defend

prevented the plea from being knowing and voluntary, *see Tollett*, 411 U.S. at 266–67, he has

failed to make such a showing in this case.  Because Petitioner was well aware of counsel's alleged

failures at the time he decided to plead guilty, he cannot show prejudice, i.e., that but for counsel's

failures he would have insisted on going to trial and not pleaded guilty.  Petitioner's vague and

conclusory assertions of prejudice are insufficient to demonstrate his plea was not knowing or

voluntary under the circumstances.  Petitioner, therefore, is not entitled to habeas corpus relief as

the result of his counsel's failures to prepare and defend.

Petitioner's other ineffective assistance claims fare no better.  Petitioner makes two claims directed at counsel's conduct in the plea process:  counsel told Petitioner he faced a life sentence if he did not plead and counsel purportedly told Petitioner that he was guaranteed to lose at trial because of his race.  For the reasons set forth above, if counsel told Petitioner that he faced a life sentence if he did not enter a plea, that statement was not only professionally reasonable, but also professionally required.  Accordingly, the statement cannot serve as the foundation for an ineffective assistance claim.

The second statement—that Petitioner would lose at trial because of his race—might be professionally unreasonable, but Petitioner has failed to demonstrate that the statement actually was made.  The statement is offered only in argument; it is not supported by the record or even an affidavit from Petitioner.  Under these circumstances, Petitioner cannot overcome the presumption of professional reasonableness accorded under *Strickland*, 466 U.S. at 689, much less the double deference owed the court of appeals' rejection of the claim.  *See Harrington*, 562 U.S. at 105.  As a consequence, the court of appeals' decision is not unreasonable on the record and it is certainly not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## IV.    Actual innocence

Petitioner's claim of actual innocence also fails to state a cognizable federal claim. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated:  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  But the *Herrera* Court did not close the door completely, stating in dicta that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were

16

no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural

obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412.  In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit.  The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review.  *See Smith v. Nagy*, 962 F.3d 192, 207-08 (6th Cir. 2020) (citing *Schlup* and *Herrera*); *Cress*, 484 F.3d at 854 (citing cases).  Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold.  Petitioner fails the first requirement.  This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated.  *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case.").  Petitioner, therefore, cannot obtain habeas corpus relief on his freestanding claim of actual innocence.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:    December 18, 2020                           /s/ *Maarten Vermaat*
                                                      Maarten Vermaat
                                                      United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).